IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEPUY SYNTHES SALES, INC. | § | |
| | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. |
| V. | § | |
| | § | |
| JARED BUNN, AARON GARZA, | § | 1:13-cv-893 |
| JASON GLYNN, AND GLOBUS | § | |
| MEDICAL, INC. | § | |
| | § | |
| Defendants | § | |

## COMPLAINT

Plaintiff DePuy Synthes Sales, Inc. ("DePuy Synthes") seeks an award of monetary damages from and injunctive relief against former DePuy Synthes sales employees, Jared Bunn ("Bunn"), Aaron Garza ("Garza"), and Jason Glynn ("Glynn") (collectively, the "Individual Defendants"), and their new employer, Globus Medical, Inc. ("Globus"), for breach of the Individual Defendants' non-competition and non-solicitation agreements with DePuy Synthes, and for interference with those agreements by Globus, Bunn, Garza, and Glynn.

## I.   PARTIES

1.     Plaintiff DePuy Synthes is a Massachusetts corporation with its principal place of business in Raynham, Massachusetts.

2.     Defendant Globus is a Delaware corporation with its principal place of business at 2560 General Armistead Avenue, Audubon, Pennsylvania 19403.  Globus's registered agent in Texas is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

3.     Defendant Bunn is an individual citizen and resident of the State of Texas who may be served at his residential address, 3512 Charlotte Rose Drive, Austin, Texas 78704.

4.     Defendant Garza is an individual citizen and resident of the State of Texas who may be served at his residential address, 1301 Dusky Thrush Trail, Austin, Texas 78746.

5.     Defendant Glynn is an individual citizen and resident of the State of Texas who may be served at his residential address, 304 Atlanta Park Drive, Georgetown, Texas 78628.

## II.     JURISDICTION AND VENUE

6.     The Court has diversity jurisdiction because the action involves citizens of different states and the amount in controversy exceeds the sum and value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1).

7.     Venue is proper because the defendants reside in, and a substantial part of the events or omissions giving rise to DePuy Synthes's claims occurred in, this judicial district . 28 U.S.C. § 1391(b)(1)& (2).

## III.     FACTS

**Business of DePuy Synthes**

8.     DePuy Synthes develops, markets, and sells products for the treatment of spinal disease, disorders, and injuries, including spinal implants, external fixation devices, related surgical instrumentation, orthobiologics, and other complementary surgical products.  Spinal implants are used in spinal surgeries to stabilize and fuse segments of the spine and include interbody cages, rods, plates, and the specialized screws used to affix these items to human bone.

9.     DePuy Synthes distributes and sells its products through directly employed sales representatives and through exclusive third-party sales organizations.

10.     The spinal device industry is extremely competitive.  DePuy Synthes competes directly with numerous spinal device manufacturers, including but not limited to Globus.  Specifically, Globus manufactures and sells product lines that compete directly with DePuy Synthes, including spinal implants, related instrumentation, and complementary surgical products including orthobiologics.  Sales representatives for DePuy Synthes and Globus compete head-to-head in the same hospitals and medical facilities for business of the same surgeon customers.

11.     The sales process for spinal devices and related products involves sales efforts with respect to the hospitals and medical facilities that actually purchase the products and with the individual surgeons who implant and use these products.

12.     The sales process for these products is highly technical, and it is vital to the sales performance of DePuy Synthes that its sales representatives develop and maintain a relationship of trust with surgeon customers.  DePuy Synthes sales representatives leverage the reputation, quality, and performance of DePuy Synthes products to strengthen DePuy Synthes's relationships with surgeon customers.  In performing their sales responsibilities for the company, DePuy Synthes sales representatives attend surgeries and visit hospital and surgeon customers on a daily basis on behalf of DePuy Synthes.

13.     As part of the sales process, DePuy Synthes sales representatives arrange for the requested spinal implants and related instruments to be sterilized and delivered to the operating room for each procedure.  They typically attend each of the surgeries performed by the surgeon customers in their territories in which DePuy Synthes products are utilized and generally remain present throughout the surgery to answer questions or address issues with respect to the products.

14.     All sales transactions are between DePuy Synthes and the hospitals or medical facilities that actually purchase the products.  Pricing for DePuy Synthes's spinal products is negotiated

and established by contract with the hospitals and is maintained on a confidential basis.  Neither the exclusive third-party sales representative organizations nor the individual sales representatives are permitted to invoice for or receive payment for the sale of DePuy Synthes products.  DePuy Synthes negotiates pricing with its hospital or medical facility accounts directly and bills and collects directly from these accounts.

15.     By virtue of their work on behalf of DePuy Synthes, DePuy Synthes sales representatives are provided a wealth of confidential information about DePuy Synthes's customers and business, including information on product pricing, DePuy Synthes's sales and marketing strategies, hospital and surgeon purchasing patterns and histories, product performance, and the experience of surgeons with DePuy Synthes products.  Sales representatives also often elicit or receive feedback and suggestions from surgeon customers for enhancing product functioning, which is maintained confidentially by DePuy Synthes.

**DePuy Synthes's Relationship and Agreements with the Individual Defendants**

16.     The Individual Defendants represented DePuy Synthes products in territories covering various medical facility and hospital accounts in Texas and the surgeon customers with privileges or practicing at those accounts.  Bunn was a sales representative responsible for accounts and surgeons in a territory covering Austin, San Marcos, and College Station, Texas, and the surrounding areas.  The accounts Bunn serviced on behalf of DePuy Synthes included, but were not limited to, the following accounts: Central Texas Medical Center, Dell Children's Medical Center, Northwest Hills Surgical Hospital, Seton Medical Center, St. David's Medical Center, St. David's North Austin Medical Center, St. David's Round Rock Medical Center, St. David's South Austin Medical Center, St. Joseph's Emergency Center – College Station, and University Medical Center Brackenridge.

17.     Glynn was a sales representative responsible for accounts and surgeons in a territory covering Temple, Killeen, and Waco, Texas, and the surrounding areas.  The accounts Glynn serviced on behalf of DePuy Synthes included, but were not limited to, the following: Scott and White Memorial Hospital, Scott and White Children's' Hospital, Darnall Army Community Hospital, Saint Joseph Regional Health Center, Scott and White Hillcrest, Saint David's Georgetown Hospital, and Seton Medical Center Williamson.  Glynn also serviced Dr. Theodore Spinks in Austin, Texas.

18.     Garza was a Sales Consultant responsible for servicing accounts in Austin, College Station, Temple, Waco, and Killeen, Texas, and the surrounding areas.  The accounts Garza serviced on behalf of DePuy Synthes included, but were not limited to, the following: Central Texas Medical Center, Darnall Army Medical Center, Dell Children's Medical Center, Northwest Hills Surgical Hospital, Providence Health Center, Scott & White Healthcare, Seton Medical Center, Seton Medical Center Williamson, St. David's Medical Center, St. David's North Austin Medical Center, St. David's Round Rock Medical Center, St. David's South Austin Medical Center, St. Joseph's Emergency Center – College Station, University Medical Center Brackenridge, and Westlake Hospital.

19.     Because the Individual Defendants would be receiving DePuy Synthes confidential information and would be relying on DePuy Synthes's goodwill to perform their job, and as a condition of their employment, they each executed an Employee Secrecy, Intellectual Property, Non-Competition and Non-Solicitation Agreement with DePuy Synthes (collectively, the "Agreements"), prior to commencing employment, which provides for certain non-competition, non-disclosure, and non-solicitation obligations.  True and accurate copies of these Agreements are attached as Exhibits A, B, and C.

20.     As sales employees representing DePuy Synthes products, the Individual Defendants were responsible for soliciting sales of DePuy Synthes products from hospitals and medical facilities in their territories, attending surgeries, servicing surgeon customers, and assisting to process sales through DePuy Synthes's corporate office in Raynham, Massachusetts.

21.     Under Section A of the Agreements, the Individual Defendants each acknowledged that:

> [d]uring [his] employment, [he] will be given access to CONFIDENTIAL INFORMATION . . . and training relating to the business of DePuy Spine Inc. and may have access to CONFIDENTIAL INFORMATION relating to the business of other entities within the Johnson & Johnson Family of Companies.

22.     Under § C(5) of their respective Agreement, the Individual Defendants each agreed to:

> not use, disclose, disseminate, lecture upon or publish any CONFIDENTIAL INFORMATION, either during [his] employment with the EMPLOYER or thereafter, unless [he] first obtain[s] the prior written consent of any COMPANY to which the CONFIDENTIAL INFORMATION relates.

23.     The Individual Defendants each also agreed under § C(6) of their respective Agreement that:

> during [his] employment with any COMPANY and for a period of eighteen (18) months after [his] last date of employment within the COMPANIES, [he] will not, directly or indirectly, perform work for any COMPETITOR in any position and in any location in with [he] could disadvantage any COMPANY or advantage the COMPETITOR by [his] disclosure or use of CONFIDENTIAL INFORMATION to which [he] had access.

24.     The Individual Defendants each further agreed under § C(7) of their respective Agreement that:

> [he] will not, during [his] employment with any COMPANY or for eighteen (18) months after [his] last date of employment within the COMPANIES, directly or indirectly, solicit any business from, sell to, or render any service to any accounts, customers or clients with which [he has] had contact during the last twelve (12) months of [his] employment within the COMPANIES in connection with the sale of any product or service that resembles or competes with one that is being (or is being

> prepared to be) sold, developed or acquired by any COMPANY for which
> [he] worked during the last twelve (12) months of [his] employment.

25.    In order to allow DePuy Synthes to ensure their compliance with their non-competition,

confidentiality, and non-solicitation obligations, the Individual Defendants each agreed under §

C(9) of their respective Agreement that they each would:

> notify [his] EMPLOYER in writing, . . . at the time [he] give[s] notice that
> [he] will be terminating [his] employment within the COMPANIES . . . of:
> the identity of each entity or person for which [he] will be working, [his]
> new title, and the responsibilities of the position.

**<u>The Individual Defendants' Knowledge of DePuy Synthes Confidential Information</u>**

26.    As sales employees for DePuy Synthes, the Individual Defendants each acquired

confidential information about DePuy Synthes's business including confidential information

regarding product pricing, sales and marketing strategy, sales performance, product performance,

and purchasing histories and patterns of surgeon customers and hospital accounts.

27.    The Individual Defendants also each received confidential product pricing information

for DePuy Synthes products on an ongoing basis each time they submitted orders for sales of

DePuy Synthes products with the corporate offices.

28.    As DePuy Synthes sales employees, the Individual Defendants had access to and were

required to review materials on DePuy Edge, an online resource center for sales employees

containing highly confidential product and sales information including product pricing,

competitive analyses providing sales employees with information about how to sell DePuy

Synthes products against competitors' products, sales memoranda touting product advantages

and disadvantages, and sales performance reports for their surgeon customers and hospital

accounts.  DePuy Edge includes specific confidential direction about how to sell DePuy Synthes

products against competitors' products, including identification of the relative weaknesses and

strengths of DePuy Synthes products in comparison with competitive products.   Materials

posted on DePuy Edge are marked "CONFIDENTIAL" and "INTERNAL USE ONLY" as appropriate.

29.     DePuy Edge is consistently updated to provide up-to-date product information, much of which is confidential, as new products are developed or launched, competitors launch new products, and new sales or marketing content is created.

30.     During their employment with DePuy Synthes, the Individual Defendants also gained confidential information about the recent purchasing patterns of their customers.

31.     As DePuy Synthes sales employees, the Individual Defendants were also provided with the Synthes Application, containing confidential information including product positioning materials, competitive intelligence, product testing results, and sales performance data. Materials posted on the Synthes Application are labeled "CONFIDENTIAL," contained in a section labeled "CONFIDENTIAL" or titled the "EMPLOYEE ONLY SECTION," as appropriate.

32.     The Synthes Application is consistently updated to provide up-to-date product information, much of which is confidential, as new products are developed or launched, competitors launch new products, and new sales or marketing content is created.

**The Individual Defendants' Resignations from DePuy Synthes**

33.     Bunn resigned, in writing, on September 24, 2012, with an effective date of September 28, 2012.  On or about the same time, Garza provided oral notice of his resignation, effective September 28, 2012.  On information and belief, both Bunn and Garza had received offers of employment from Globus that they intended to take at the time of their resignation.

34.     Glynn resigned in writing on March 26, 2013, providing two weeks' notice.  Glynn's resignation was submitted approximately two weeks after a DePuy Synthes sales manager in

Texas, Jody Stevenson, had resigned to join Globus's sales team in Texas.  Stevenson had served

as a sales manager for territories covered by Glynn, and Glynn reported to Stevenson.  Glynn and

Stevenson were in communication in and around the time of their mutual resignations.  Glynn's

last day with DePuy Synthes was on or about April 5, 2013.

35.     DePuy Synthes conducted an exit interview with Glynn, during which he informed

DePuy Synthes that he was taking a position with Globus as Sales Territory Manager in the

Austin, Texas territory.

**The Individual Defendants' Competitive Activities**

36.     Following their resignations from DePuy Synthes, the Individual Defendants began

working for Globus, a direct competitor of DePuy Synthes.  Bunn and Garza started at Globus in

October 2012.  Glynn started with Globus in or around April 2013.  Stevenson also started with

Globus in the same time period.

37.     Globus was aware of the Agreements between the Individual Defendants and DePuy

Synthes, and the obligations provided under that agreement, including the non-disclosure, non-

competition and non-solicitation obligations contained in §§ C(5) – C(8) of the Agreements.

38.     Globus intentionally recruited the Individual Defendants as a team in an effort to rapidly

build its own business, not by competing through its products, services, and pricing, but instead

by appropriating and capitalizing on the goodwill, customer relationships, and confidential

information that DePuy Synthes necessarily entrusts to its sales employees.   By virtue of

Globus's recruiting and hiring, around the same time, of several DePuy Synthes sales employees

with responsibility for overlapping or geographically adjacent territories, the former DePuy

Synthes sales employees are able to use their collective efforts and assistance to each other in

soliciting sales from DePuy Synthes customers while claiming not to violate their individual

non-compete agreements with DePuy Synthes .  Globus has continued to recruit additional sales employees of DePuy Synthes with the intention of building its business based on the goodwill, customer relationships, and confidential information of DePuy Synthes.

39.    The Individual Defendants have and will continue to use, disclose, and draw upon DePuy Synthes confidential information and goodwill in soliciting and assisting each other to solicit their former DePuy Synthes accounts and customers on behalf of Globus, a direct competitor of DePuy Synthes .

40.    In their positions with Globus, Bunn, Glynn, and Garza have been representing competing products from Globus and have directly and indirectly solicited sales from and sold competitive products to the hospital accounts and surgeon customers with whom they worked on behalf of DePuy Synthes in the last twelve months of their employment.

41.    Since joining Globus, Glynn, Bunn, and Garza have been working together to assist each other and other Globus representatives in soliciting sales from and providing services to the DePuy Synthes hospital accounts and surgeon customers with whom they worked while employed by DePuy Synthes, including by making introductions and sharing DePuy Synthes confidential information.

42.    Garza and Glynn have jointly solicited Dr. Von Reuden, a DePuy Synthes customer served by Garza during the last twelve months of his employment with DePuy Synthes.  DePuy Synthes has suffered and will continue to suffer damages and irreparable harm due to these activities of Globus and the Individual Defendants.

43.    Bunn, Garza and Glynn have jointly solicited business from Seton Medical Center Williamson and have induced Dr. Spinks, a longtime DePuy Synthes customer, to buy Globus

products Bunn and Garza have been supporting and attending surgeries for Globus at Seton Williamson.

44.     Garza has solicited Dell Children's Medical Center and induced Dr. Geck, a longtime DePuy Synthes customer, served by Garza and Bunn while at DePuy Synthes, to buy Globus products  Garza and Glynn have also jointly solicited and served Dell Children's by participating in spine surgeon meetings and working with hospital administrators to facilitate sales by Globus.

45.     On information and belief, the Individual Defendants have improperly solicited or served and assisted each other to indirectly solicit or serve other accounts and customers with whom they had contact during their last twelve months of employment with DePuy Synthes.

46.     The prohibited competitive activities have been performed with the knowledge and encouragement of Globus for the purpose of capitalizing improperly on the investment of DePuy Synthes in its employees and its customer relationships.  Globus has permitted and will continue to permit and encourage these breaches of the Agreements despite notice from DePuy Synthes that these activities are in breach.

**DePuy Synthes's Efforts to Enforce the Agreements**

47.     Bunn and Garza commenced employment with Globus in October 2013.  By letter dated October 22, 2012, DePuy Synthes, through counsel, reminded Globus, Bunn, and Garza of Bunn's and Garza's obligations under their Agreements, and demanded information regarding their employment as required by § C(9) of the Agreements.  Bunn and Garza had breached their contractual notice duties by failing to provide the requested information.  Neither Globus, Bunn, nor Garza responded to DePuy Synthes' demands.

48.     When Globus failed to respond to DePuy Synthes's request for information about the scope and nature of Bunn's and Garza's responsibilities for Globus, DePuy Synthes sent another letter dated December 13, 2012 explaining that in light of Globus's failure to provide the

requested information, DePuy Synthes would presume that any violation of the Agreements by Bunn or Garza was solicited by Globus.

49.     By letter dated December 19, 2012, Globus responded that it was aware of Bunn's and Garza's post-employment restrictions and intended to honor those restrictions.  Globus represented that Bunn and Garza were not servicing on behalf of Globus any customer they were assigned to in the last twelve months of their employment with DePuy Synthes.  Globus failed to provide information about the accounts or customers assigned to or serviced by Bunn or Garza as demanded by DePuy Synthes.

50.     By letter dated March 15, 2013, DePuy Synthes informed Globus that despite Globus's assurances, DePuy Synthes had recently received information that Garza had been violating his non-competition and non-solicitation obligations.  DePuy Synthes identified Bunn's and Garza's restricted hospital accounts, and requested immediate written assurances that Globus had restricted Garza and Bunn from communicating with, or directly or indirectly, soliciting sales from, selling to, calling on, servicing, or otherwise having any responsibility for their former DePuy Synthes accounts.

51.     Globus responded by letter dated March 25, 2013, acknowledging the receipt of the account and customer lists. Globus claimed that it would not be bound to restrict Bunn and Garza as to certain accounts.  DePuy Synthes never agreed that Globus was entitled to assign Bunn or Garza to any of the accounts they had formerly served for DePuy Synthes.

52.     In or around July and August 2013, DePuy Synthes learned that the Bunn, Garza, and Glynn were actively soliciting and making sales to their former DePuy Synthes surgeon customers and hospital accounts, and have actively worked together to assist each other in indirectly soliciting those DePuy Synthes customers that each of them formerly served.  Globus

is aware of and benefiting from the solicitation efforts and sales made by Bunn, Garza, and Glynn to their former DePuy Synthes accounts and customers.  Globus hired and has assigned Bunn, Garza and Glynn in order to improperly solicit these accounts and customers, in order to increase its own sales by trading on the goodwill, customer relationships, and confidential information of DePuy Synthes.

53.     By letter dated September 12, 2013, DePuy Synthes informed Globus that evidence showed that Bunn, Garza, and Glynn were operating in complete disregard of their non-competition and non-solicitation obligations.  DePuy Synthes again identified hospital accounts and surgeon customers with whom the Individual Defendants had worked on behalf of DePuy Synthes, requested immediate written assurances that Globus would cause the Individual Defendants to immediately  cease and desist any inappropriate competitive activities.

54.     Globus failed to provide the requested assurances.

## IV.     CAUSE OF ACTION
(Breach of Contract – Individual Defendants)

55.     The allegations contained in paragraphs 1- 54 above are incorporated by reference, as if fully stated herein.

56.     The Agreements are valid and enforceable agreements.  The non-competition and non-solicitation covenants contained in the Agreements are reasonable and necessary to protect DePuy Synthes's confidential information and trade secrets, goodwill, customer relationships, and other protectable interests.

57.     DePuy Synthes has fully performed any and all of its obligations under the Agreements.

58.     The Individual Defendants received DePuy Synthes confidential information and specialized training in order to perform their responsibilities during the course of their employment.

59.     The Individual Defendants' solicitation, sales, and service on behalf of Globus, as alleged herein, are in breach of the Agreements.

60.     The Individual Defendants' continued solicitation and service on behalf of Globus will inherently and necessarily involve the use or disclosure of DePuy Synthes confidential information, in breach of the Agreements.

61.     Bunn and Garza also breached their Agreements by failing to provide information relating to their employment with Globus.

62.     The Individual Defendants' breach of the Agreements has caused and will continue to cause DePuy Synthes to suffer damages and irreparable harm including but not limited to lost sales and damage to its goodwill and customer relationships.

63.     The value of the Individual Defendants' compliance with their contractual obligations and of any damages exceeds $75,000.  In addition, the Individual Defendants are liable for DePuy Synthes's attorney's fees under TEX. CIV. P. & REM. CODE §§ 38.001 et seq.

## V.     CAUSE OF ACTION
### (Breach of the Duty of Loyalty – Individual Defendants)

64.     The allegations contained in Paragraphs 1- 63 above are incorporated by reference as if fully stated herein.

65.     The Individual Defendants were employed by DePuy Synthes in a position of trust and confidence, and therefore owed a duty of loyalty to DePuy Synthes.

66.     The Individual Defendants had access to and received confidential information belonging to DePuy Synthes in the course of their employment.

67.    DePuy Synthes took reasonable steps to protect its confidential information from disclosure, including, inter alia, requiring its sales representative employees, including the Individual Defendants, to execute the Agreements as a condition of employment.

68.    The Individual Defendants' representation of competitors' products and direct and indirect solicitation of sales from their DePuy Synthes surgeon customers and hospital accounts involve the use and disclosure of confidential information belonging to DePuy Synthes, in breach of their duty of loyalty to DePuy Synthes, and have caused and will continue to cause damage and irreparable harm to DePuy Synthes.

## VI. CAUSE OF ACTION

(Tortious Interference with Contractual Relations – Globus)

69.    The allegations contained in Paragraphs 1- 68 above are incorporated by reference as if fully stated herein.

70.    Globus had knowledge of the existence of the Individual Defendants' non-disclosure, non-competition and non-solicitation obligations to DePuy Synthes under the Agreements before hiring any of the Individual Defendants.

71.    Globus hired and continued to employ the Individual Defendants without adequate restrictions despite its knowledge of their non-disclosure, non-competition and non-solicitation obligations to DePuy Synthes under the Agreements.

72.    Globus recruited and hired the Individual Defendants in order to convert business from DePuy Synthes by improperly employing the individuals to directly and indirectly solicit the accounts and customers with whom they had contact during the prior twelve months of their employment with DePuy Synthes in order to grow its own sales.

73.    Globus's continued employment of the Individual Defendants without adequate restrictions is designed to induce them to continue to breach their contractual obligations to DePuy Synthes.

74.    Globus's continued employment of the Individual Defendants without adequate restrictions is improper in motive or means as it is being done with the intention of unfairly competing by using confidential information protected under the Agreement and by unfairly capitalizing on the goodwill and customer relationships developed by DePuy Synthes.

75.    Globus's unlawful interference has caused and continues to cause irreparable harm and substantial damage to DePuy Synthes.

## VII.    CAUSE OF ACTION

(Tortious Interference with Contractual Relations – Bunn, Garza and Glynn)

76.     The allegations contained in Paragraphs 1-75 above are incorporated by reference as if fully stated herein.

77.    Bunn, Garza, and Glynn are aware that each of them is subject to the same non-competition and non-solicitation obligations to DePuy Synthes under the Agreements and that each of them is specifically prohibited from directly and indirectly soliciting or serving restricted accounts or customers.

78.    Each of Bunn, Garza, and Glynn has improperly assisted and encouraged each other to violate their Agreements including by soliciting or serving each other's restricted accounts or customers and by introducing each other to and sharing DePuy Synthes confidential information about their restricted accounts and customers.

79.    The assistance provided by the Individual Defendants to each other is intended to sidestep and neutralize their individual non-compete agreements with DePuy Synthes and

transfer customer relationships and sales from DePuy Synthes to and for the benefit of the

Individual Defendants and Globus.

80.     These actions are improper in motive, means, or both and are done with the intention of

unfairly competing by using confidential information protected under the Agreement and by

unfairly capitalizing on the goodwill and customer relationships developed by DePuy Synthes

and otherwise by unfairly competing.

81.     The unlawful interference of the Individual Defendants has caused and continues to cause

substantial damage and irreparable harm to DePuy Synthes.

## VIII.   RELIEF REQUESTED

        WHEREFORE, Plaintiff, DePuy Synthes, requests that the Court grant the following

relief:

(1)     Enter relief in the form of a preliminary injunction, ordering:

        (a)     Until further order of the Court or date certain, Garza be enjoined from:

                (i)     Directly or indirectly soliciting or selling to, servicing, delivering product

                        to, attending or covering surgeries at, communicating with, or acting as a

                        sales representative for Globus, or any manufacturer of spinal products at

                        the Garza Restricted Accounts or with respect to any surgeon affiliated

                        with or performing surgeries at one of the Garza Restricted Accounts;

                (ii)    Assisting Globus, including any employee of Globus, or anyone else to

                        solicit or sell spinal products to the Garza Restricted Accounts or to any

                        surgeon affiliated with or performing surgeries at one of the Garza

                        Restricted Accounts, regardless of the location where a surgery is

                        performed;

(iii)    Consulting with or communicating with Globus, including any employee

of Globus, or anyone else concerning the sale of spinal products to the

Garza Restricted Accounts or any surgeon affiliated with or performing

surgeries at one of the Garza Restricted Accounts, regardless of the

location where a surgery is performed; and

(iv)    Serving, soliciting, or communicating concerning any of the Glynn or

Bunn Restricted Accounts for the restrictive periods identified respectively

in Paragraphs (b) and (c).

For purposes of this injunction, the Garza Restricted Accounts shall include, at

least: Central Texas Medical Center, Darnall Army Medical Center, Dell Children's

Medical Center, Northwest Hills Surgical Hospital, Providence Health Center, Scott

& White Healthcare, Seton Medical Center, Seton Medical Center Williamson, St.

David's Medical Center, St. David's North Austin Medical Center, St. David's

Round Rock Medical Center, St. David's South Austin Medical Center, St. Joseph's

Emergency Center – College Station, University Medical Center Brackenridge, and

Westlake Hospital.  The Garza Restricted Accounts shall also include any other

account identified in discovery as an account with which Garza had contact with

during the last twelve months of his employment with DePuy Synthes.

(b)    Until further order of the Court or date certain, Glynn be enjoined from:

(i)    Directly or indirectly soliciting or selling to, servicing, delivering product

to, attending or covering surgeries at, communicating with, or acting as a

sales representative for Globus, or any manufacturer of spinal products at

the Glynn Restricted Accounts or with respect to any surgeon affiliated

with or performing surgeries at one of the Glynn Restricted Accounts, regardless of the location at which a surgery is performed;

(ii)    Assisting Globus, including any employee of Globus, or anyone else to solicit or sell spinal products to the Glynn Restricted Accounts or to any surgeon affiliated with or performing surgeries at one of the Glynn Restricted Accounts, regardless of the location where a surgery is performed;

(iii)   Consulting with or communicating with Globus, including any employee of Globus, or anyone else concerning the sale of spinal products to the Glynn Restricted Accounts or any surgeon affiliated with or performing surgeries at one of the Glynn Restricted Accounts, regardless of where a surgery is performed; and

(iv)    Serving, soliciting, or communicating concerning any of the Garza or Bunn Restricted Accounts for the restrictive periods identified respectively in Paragraphs (a) and (c).

For purposes of this injunction, the Glynn Restricted Accounts shall include at least: Scott and White Memorial Hospital, Scott and White Childrens' Hospital, Darnall Army Community Hospital, Saint Joseph Regional Health Center, Scott and White Hillcrest, Saint David's Georgetown Hospital, and Seton Medical Center Williamson, as well as Dr. Theodore Spinks.  The Glynn Restricted Accounts shall also include any other account identified in discovery as an account with which he had contact during the last twelve months of his employment with DePuy Synthes.

(c)    Until further order of the Court or date certain, Bunn be enjoined from:

(i)    Directly or indirectly soliciting or selling to, servicing, delivering product to, attending or covering surgeries at, communicating with, or acting as a sales representative for Globus, or any manufacturer of spinal products at the Bunn Restricted Accounts or with respect to any surgeon affiliated with or performing surgeries at one of the Bunn Restricted Accounts, regardless of the location where the surgery is performed;

(ii)   Assisting Globus, including any employee of Globus, or anyone else to solicit or sell spinal products to the Bunn Restricted Accounts or to any surgeon affiliated with or performing surgeries at one of the Bunn Restricted Accounts, regardless of the location where a surgery is performed;

(iii)  Consulting with or communicating with Globus, including any employee of Globus, or anyone else concerning the sale of spinal products to the Bunn Restricted Accounts or any surgeon affiliated with or performing surgeries at one of the Bunn Restricted Accounts, regardless of the location where a surgery is performed; and

(iv)   Serving, soliciting, or communicating concerning any of the Garza or Glynn Restricted Accounts for the restrictive periods identified respectively in Paragraphs (a) and (b).

For purposes of this injunction, the Bunn Restricted Accounts shall include at least: Central Texas Medical Center, Dell Children's Medical Center, Northwest Hills Surgical Hospital, Seton Medical Center, St. David's Medical Center, St. David's North Austin Medical Center, St. David's Round Rock Medical Center, St. David's

South Austin Medical Center, St. Joseph's Emergency Center – College Station, and University Medical Center Brackenridge.  The Bunn Restricted Accounts shall also include any other account identified in discovery as an account with which he had contact during the last twelve months of his employment with DePuy Synthes.

(d)     Until further order of the Court or date certain, Bunn, Garza, and Glynn are enjoined from using or disclosing the confidential information of DePuy Synthes and Globus is enjoined from soliciting the disclosure from Bunn, Garza, Glynn, or or using confidential information of DePuy Synthes.

(e)     Until further order of the Court or date certain, Globus is enjoined from directly or indirectly employing or engaging Bunn, Garza, or Glynn in any capacity identified in sub-paragraph (a) through (d).

(2)     enter judgment in favor of DePuy Synthes on Counts IV through VII of the Complaint;

(3)     award all monetary damages determined at trial;

(4)     enter permanent injunctions in the form identified in (1) above;

(5)     award DePuy Synthes its attorney's fees, interest, and costs; and

(6)     award such other relief as this Court deems just and proper.

Dated:  October 7, 2013

Respectfully submitted,


/s/Stephen F. Fink

Stephen F. Fink
Texas State Bar No. 07013500
**Thompson & Knight LLP**
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, TX 75201-2533
Telephone:  (214) 969-1120
Facsimile:  (214) 880-3212

ATTORNEYS FOR DEPUY SYNTHES SALES,
INC.

Of Counsel:

Kathryn K. Conde
Shaghayegh Tousi
NUTTER, MCCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, MA  02210
(617) 439-2000

2259290.2